# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SAMUEL MCCRAE, III,       )
                                   )
          Plaintiff,       )
                                   )
          v.              )         1:24CV368
                                   )
TAMARA RUSH, et al.,       )
                                   )
          Defendants.    )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendants' Motion to Dismiss. (Docket Entry 9.) For the following reasons, the undersigned recommends that the Motion should be granted.

## I.    BACKGROUND

Plaintiff, a *pro se* prisoner currently housed at Scotland Correctional Institution ("SCI"), initiated this action on April 29, 2024 (Complaint ("Compl."), Docket Entry 2), and was permitted to proceed *in forma pauperis* (Docket Entry 5; *see also* Docket Entry 1). Plaintiff filed said Complaint pursuant to 42 U.S.C. § 1983 alleging violations of his Eighth Amendment rights by Defendants "Tamara Rush" ("Rush"); "Warden Parson" ("Warden Parsons"); "Jernigan" ("Jernigan-Brown"); "Patrella[;]" "J. Laub" ("Laub"); and "MA LPA" ("Marmorstein") (collectively, "Defendants"). (Compl. at 1-4)[1] Plaintiff brings suit against

---

[1] Defendants state that Plaintiff named "as defendants Tamara Rush, Michael T. Parsons, Valris Jernigan-Brown, Cody Patrella, Jessica Laub, and 'MA LPA' (i.e., Master of Arts Licensed Psychological Associate) (Jonathan Marmorstein)." (Docket Entry 10 at 1.) Unless otherwise noted, all citations herein refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

Rush, Jernigan, Patrella, and Marmorstein in their individual capacities; he does not indicate the capacity in which he intends to sue Warden Parsons and Laub. (*See id.*)

Plaintiff alleges that Defendants subjected him to "inhuman, dehumanizing conditions that was cruel, and unusual" by depriving him of haircuts, cell-cleaning supplies, shaves, exercise, sunlight, fresh air, outside recreation, and inside recreation while housed in isolation at SCI. (*See* Compl. at 6-7.) He alleges that he is "vitamin D deficient" and that said deprivations exacerbate the physical and psychological pain he experiences due to this deficiency and causes him emotional distress. (*See id.*; *see also id.* at 12.) Plaintiff further alleges that "in total I have been housed on restrictive housing surpass 60 days." (*Id.* at 6-7.) He also alleges that his health is at risk because inmates have been infected with coronavirus ("COVID-19"), because he is potentially exposed to "bacteria infections" caused by unsanitary cell conditions, and because he has been deprived of "masks, gloves, [and] sanitation." (*See id.* at 7-8.)

Plaintiff goes on to allege that "[i]t is clear the aim of this prison is to cause us harm for they are aware of the harm and make no attempt to remove the harm[.]" (*Id.* at 8.) He alleges that the deprivations he experienced were "done with malice intent" and that "those in authority aren't enforcing their authority unless its time to enforce it on us. Every policy is upheld by warden & unit manager(s) when its to punish us but none is upheld when its to the benefit of our life & liberty." (*Id.*) Plaintiff states, "I included [Laub] in this litigation because she has a legal and moral obligation to report these matters to authorities after witnessing it, instead she turn a blind eye ... by her not reporting it she is aiding/abeting [sic]." (*Id.* at 8-9.)

He further alleges that Warden Parsons is aware of the deprivations he alleges and that it is "his job as warden, when he is notified of such misconduct which threaten the safety and

2

security of the prison to manage his subordinates and assure that they are upholding policy and performing in full capacity to maintain a safe environment." (*Id.* at 9.) Plaintiff claims that Warden Parsons has been put on notice of his allegations due to a past evacuation of a cell block after a COVID-19 outbreak and due to Plaintiff having written him, but that no action has been taken to clean Plaintiff's cell. (*See id.* at 9-10.) Plaintiff alleges that "[g]rievance process are being manipulated and not processed to abort rectification, justice." (*Id.* at 10.)

Plaintiff also alleges that he "asked assistant unit manager Oxendine why haven't my previous grievance been processed he said he didn't know." (*Id.*) Plaintiff further alleges that he presented Oxendine with another copy of said grievance and asked him to sign it in front of Plaintiff, that Oxendine signed it but did not date it, and that Oxendine told Plaintiff that Jernigan told him not to date it. (*See id.*) Plaintiff alleges that failing to date the grievance is a violation of "protocol" and that Jernigan's motivation was "to persuade [Plaintiff] not to put grievance in making empty promises of rectifying matters and never do [sic]." (*Id.*)

Plaintiff next alleges that Oxendine "is being manipulated by unit manager Jernigan … the prison will rectify a matter for one day then revert. … [R]etaliation follow each time I do litigation [sic]." (*Id.* at 11.) Plaintiff further alleges that "I filed this in January and it was filed on January 24-24[2] I stated retaliation follow if I'm shipped out I want it on record well 7 days afterwards I was shipped to 2 different facilities [sic]." (*Id.*) Plaintiff then signs and dates the Complaint "4-

---

[2] The undersigned notes that on January 24, 2024, Plaintiff filed a similar action in this Court that was dismissed as defective without prejudice to Plaintiff filing a new complaint on proper § 1983 forms. (*See* 24-cv-00073-TDS-JLW.) In that action, Plaintiff filed a document written on a form captioned "North Carolina Department of Adult Correction Prisons Administrative Remedy Procedure" dated "1-16-24" that complains of being housed on segregation for more than 60 days, being deprived of the ability to clean his cell, and being put at risk of contracting COVID-19. (*See* Docket Entry 1-1 in 24-cv-00073-TDS-JLW.) Said document appears to be signed by an officer named Oxendine but not dated. (*See id.*)

3

24-24." (*Id.*) In his Complaint, Plaintiff states, "I exhausted the grievance process." (*Id.* at 14.) Plaintiff also writes "Honorable Clerk if you don't mind please attach the copy of grievance that I previously forwarded with litigation pertaining to this matter with this enclosed 1983 [sic]." (*Id.* at 18.) However, Plaintiff did not file a copy of any grievance in the instant action.

On October 3, 2024, Defendants filed a Motion to Dismiss (Docket Entry 9), and their memorandum in support thereof argues that the Complaint fails to state a claim upon which relief can be granted (Docket Entry 10). On October 4, 2024, a "*Roseboro* Letter"[3] was sent to Plaintiff at the address on file with the Court (at Marion Correctional Institution), informing Plaintiff that a dispositive motion had been filed in the instant action and advising him of the consequences of failing to respond. (Docket Entry 11.) Plaintiff did not file a response.

## II.    DISCUSSION

### a.    Defendant's Motion to Dismiss is Uncontested.

As an initial matter, because Plaintiff "fail[ed] to file a response [to Defendant's motion to dismiss] within the time required by [this Court's Local Rules], the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." M.D.N.C. LR 7.3(k); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.*, No. 1:08CV918, 2010 WL 1667285, at *6-8 (M.D.N.C. Apr. 23, 2010) (unpublished) (analyzing this Court's Local Rules 7.3(f), 7.2(a), and 7.3(k) and discussing authority supporting proposition that failure to respond to argument amounts to concession). "Plaintiff's status as a *pro se* litigant does not excuse his inaction." *Simpson v. Hassan*, No. 1:08CV455, 2014 WL 3547023, at *1 n.4 (M.D.N.C. July 16,

---

[3] A notice sent pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) advises a *pro se* plaintiff of their right to file responses to dispositive motions filed by defendants.

4

2014) (unpublished). Alternatively, as explained below, the Court should grant Defendant's Motion to Dismiss for the reasons stated herein. *Cf. Leguia v. Moynihan*, No. 318CV00503MOCDSC, 2019 WL 464971, at *2 (W.D.N.C. Feb. 6, 2019) (unpublished) ("Here, the plaintiff has not responded to the Motion to Dismiss. The Court has, therefore, closely considered the defendant's motion and supporting memorandum as the Court's duty does not end when a *pro se* party fails to respond.") (italics added).

### b. Motion to Dismiss Pursuant to 12(b)(6) Standard

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), a court must determine whether the complaint is legally and factually sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (citations and quotations omitted).

The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of factual enhancement[,] … unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591

Case 1:24-cv-00368-TDS-JLW   Document 14   Filed 04/28/25   Page 5 of 22

F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

### c. *Pro Se* Pleading Standard

*Pro se* complaints are to be liberally construed in assessing sufficiency under the Federal Rules of Civil Procedure. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Liberal construction is particularly appropriate when a *pro se* complaint raises civil rights issues." *Moody-Williams v. LipoScience*, 953 F. Supp. 2d 677, 680 (E.D.N.C. 2013) (italics in original) (liberal construction of *pro se* claims includes documents and pleadings); *see also Brown v. N.C. Dept. of Corr.*, 612 F. 3d 720, 722 (4th Cir. 2010). However, even under this liberal construction, "generosity is not fantasy," and the Court is not expected to plead a plaintiff's claim for him. *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998).

### d. Section 1983 Standard

Section 1983 makes actionable alleged deprivations of constitutional rights. *See* 42 U.S.C. § 1983; *see also Connell v. Adams*, No. 1:22CV935, 2023 WL 2914856, at *3 (M.D.N.C. Apr. 12, 2023) (unpublished), *report and recommendation adopted sub nom. Connell v. Karen Russell*, PA-C, No. 1:22-CV-935, 2023 WL 3229968 (M.D.N.C. May 3, 2023). To state a viable Section 1983 claim, Plaintiff must show that Defendants "deprived [him] of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "A state official can be

Case 1:24-cv-00368-TDS-JLW   Document 14   Filed 04/28/25   Page 6 of 22

liable in a § 1983 suit in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity." *King v. Rubenstein*, 825 F.3d 206, 223 (4th Cir. 2016).

As relevant here, for personal liability, the plaintiff must "show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "As a general matter, a [state actor] may incur [Section] 1983 liability only through affirmative misconduct." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 202 (4th Cir. 2002) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535-36 (1981)). "[Section] 1983 must be 'read against the background of tort liability that makes a man responsible for the natural consequences of his actions.' " *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)). Accordingly, "it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.' " *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge*, 550 F.2d at 928). "Because vicarious liability is inapplicable to … § 1983 suits, the plaintiff … must plead that each Government-official defendant, through his own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (citation omitted).

"Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Graham*, 473 U.S. at 165 (internal quotation marks omitted). "To state a[n official-capacity] cause of action … a [S]ection 1983 plaintiff must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008).

"[T]he Fourth Circuit … has said that supervisory liability may attach under Section 1983 if a plaintiff can establish three elements: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Simmons v. Stubbs*, No. 1:11CV291, 2011 WL 3665027, at *2 (M.D.N.C. Aug. 19, 2011) (unpublished) (citing *Randall*, 302 F.3d at 206; *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)) (cleaned up), *report and recommendation adopted*, No. 1:11CV291, 2012 WL 760822 (M.D.N.C. Mar. 7, 2012).

"[A] plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Rice v. Rogers*, No. 1:22CV122, 2024 WL 3278527, at *3 (M.D.N.C. Jan. 29, 2024) (unpublished) (citing *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995)), *report and recommendation adopted as modified*, No. 1:22-CV-122, 2024 WL 3278539 (M.D.N.C. Mar. 18, 2024). When determining whether a defendant should be sued in his individual or official capacity, the court considers several factors, including (1) "whether the plaintiff failed to allege that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such policy or custom on the face of the complaint;" (2) "whether the plaintiff made a request for compensatory or punitive damages, since such relief is unavailable in official capacity suits; and" (3) "whether the defendant raised a qualified immunity defense, which indicates that the defendant interpreted the plaintiff's action as being against him personally."

*Gregory v. Currituck Cnty.*, No. 21-1363, 2022 WL 1598961, at *2 (4th Cir. May 20, 2022) (citing *Biggs v. Meadows*, 66 F.3d 56, 60-61 (4th Cir. 1995)).

### e. <u>Conditions of Confinement</u>

"The Eighth Amendment, which prohibits infliction of 'cruel and unusual punishments,' applies to claims by prisoners against corrections officials challenging conditions of confinement." *Porter v. Clarke*, 923 F.3d 348, 355 (2019) (citations omitted). This "imposes a duty on prison officials to provide humane conditions of confinement … [and] ensure that inmates receive adequate food, clothing, shelter, and medical care." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal quotations and citation omitted). However, "the Constitution does not mandate comfortable prisons," and as often may be the case, some conditions that are "restrictive and even harsh … are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Thus, "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotations and citation omitted).

Eighth Amendment condition of confinement claims are evaluated by a two-part test that has both an objective and subjective component. *Porter*, 923 F.3d at 355. "First, the deprivation alleged must be, objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations and quotation marks omitted). To be "sufficiently serious … a prison official's act or omission must result in the denial of 'the minimal civilized measures of life's necessities.'" *See id.* (quoting *Rhodes*, 452 U.S. at 347). Second, "a prison official must have a sufficiently culpable state of mind." *Id.* (internal quotation marks omitted) (quoting *Wilson*, 501 U.S. at 297). "That state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*,

9

501 U.S. at 302-303). "A claim of deliberate indifference … implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice." *White ex rel. White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997).

### f. <u>Deliberate Indifference to a Serious Medical Need</u>

Insufficient medical care can state a claim under § 1983, but only where a defendant violates the United States Constitution by engaging in deliberate indifference to a serious medical need. *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir.1999). A plaintiff must typically allege facts showing that: "(1) [he] had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the [plaintiff] had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the [plaintiff] was harmed." *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023).

### g. <u>Defendants' Motion to Dismiss</u>

Again, Defendants filed a Motion to Dismiss arguing that the Complaint fails to state a claim upon which relief can be granted.

*Defendant Marmorstein should be dismissed from this action.*

As a threshold matter, Defendants point out that "[a]side from listing 'MA LPA' as a defendant, there are no allegations in the Complaint as to 'MA LPA' or to a Licensed Psychological Associate or to Jonathan Marmorstein." (Docket Entry 10 at 3.) The undersigned agrees. Dismissal of a Defendant is appropriate where a Plaintiff alleges no

10

facts that would allow the court to impose individual liability upon that Defendant. *See DeWitt v. Hutchins*, 309 F. Supp. 2d 743, 751 (M.D.N.C. 2004). Here, Plaintiff has not alleged any facts at all against Marmorstein; therefore, the undersigned recommends dismissal of Marmorstein as a Defendant.

### Plaintiff's Attempts to State Claims Against Defendants Laub, Warden Parsons, Rush, Parsons, Jernigan-Brown, and Patrella fail.

Next, Defendants argue that "[a]ll claims against Defendants Rush, Parsons, Jernigan-Brown, and Patrella must be dismissed because the generalized and collective allegations in the Complaint as to these defendants are insufficient to state a claim that each defendant, through each one's individual actions, violated Plaintiff's rights under the Eighth Amendment." (Docket Entry 10 at 6.) Defendants go on to argue that Plaintiff cannot state a sufficient Eighth Amendment conditions of confinement claim because he "has not adequately pleaded … that he has a serious medical need." (*Id.* at 6-7.) Defendants further argue that "[a]ll claims against [Warden] Parsons must be dismissed because Plaintiff's allegations as to [Warden] Parsons are not sufficient to make out a plausible claim of deliberate indifference" and that "[a]ll claims against Defendant Laub should be dismissed because Plaintiff does not plead facts sufficient to show that Defendant Laub knew of and disregarded a substantial risk to inmate health or safety." (*Id.* at 10-12.) For the following reasons, the undersigned agrees, and thus recommends that Defendants' Motion to Dismiss be granted.

### Plaintiff's Suit is Construed as an Official-Capacity Suit Against Defendants Laub and Warden Parsons

As a threshold matter, the Court must first determine the capacity in which Plaintiff is suing Laub and Warden Parsons. As to the first factor, Plaintiff does not fail to allege that

Warden Parsons acted in accordance with a governmental policy or custom; to the contrary, he alleges that it is "his job as warden, when he is notified of … misconduct [that] threaten[s] the safety and security of the prison[,] to manage his subordinates and assure that they are upholding policy and performing in full capacity to maintain a safe environment." (Compl. at 9.) Moreover, Plaintiff alleges that "those in authority aren't enforcing their authority unless [it's] time to enforce it on us. Every policy is upheld by [Warden Parsons and] unit manager(s) when [it's] to punish us but none is upheld when [it's] to the benefit of our life & liberty." (*Id.* at 8.) Plaintiff further states, "I included [Laub] in this litigation because she has a legal and moral obligation to report these matters to authorities after witnessing [them], instead[,] she turn[s] a blind eye … by her not reporting [them,] she is aiding/[abetting]." (*Id.* at 8-9.) Taken together and construing the *pro se* Plaintiff's pleadings generously, the undersigned finds that these suffice as indicia of a policy or custom that suggest the claims against Laub and Warden Parsons are brought against them in their official capacities. *See Biggs*, 66 F.3d at 61 (4th Cir. 1995).

As to the second factor, here, Plaintiff states that for relief, he "would like … $10,000 from each Defendant" (Compl. at 12) but does not state whether he seeks said relief as compensatory or punitive damages. *Cf. id.* This factor also weighs in favor of a finding that the claims against Laub and Warden Parsons are brought against them in their official capacities. *See Manno v. McRae*, No. 4:24-CV-00060-BO-BM, 2024 WL 4941302, at *2 (E.D.N.C. Dec. 2, 2024) ("Though damages are unavailable in official capacity suits and the plaintiff here does request damages, such a request does not always 'outweigh the nature of the proposed claims,' especially when the plaintiff's apparent intent is to hold the defendants

12

'accountable for actions taken in their capacity as state officials.' ") (citing *Thomas v. N. Carolina Mut. Life Ins. Co.*, 2022 WL 19569528, at *4 n.5 (E.D.N.C. 2022) (unpublished)).

Finally, as to the third factor, Defendants do not assert the defense of qualified immunity. Since qualified immunity is unavailable in official capacity suits, this suggests that Defendants did not perceive the Complaint to state a claim against them as individuals. *See Biggs*, 66 F.3d at 61 (4th Cir. 1995) (citing *Graham*, 473 U.S. at 165). Ultimately, then, all three factors demonstrate that Plaintiff intended to sue Laub and Warden Parsons in their official capacities and not as individuals. The undersigned therefore construes Plaintiff's Complaint accordingly.

### Plaintiff Fails to State an Official-Capacity Claim Against Defendants Laub and Warden Parsons

Again, Plaintiff alleges "those in authority aren't enforcing their authority unless [it's] time to enforce it on us. Every policy is upheld by [Warden Parsons and] unit manager(s) when [it's] to punish us but none is upheld when [it's] to the benefit of our life [and] liberty." (Compl. at 8.) As to the official-capacity claims against Defendants Laub and Warden Parsons, construing Plaintiff's claim generously, the undersigned finds that he does plead the existence of an official policy or custom. However, Plaintiff fails to state a sufficient claim that this policy is attributable to SCI. Instead, Plaintiff's claims above indicate that there are policies in place at SCI that tend to benefit his life and liberty, and that Warden Parsons selectively disregards those policies and instead only abides by policies he feels will punish Plaintiff.

Plaintiff further undermines any attribution of an official policy to SCI by alleging that Warden Parsons is aware of the deprivations Plaintiff alleges and that it is "his job as warden, when he is notified of … misconduct [that] threaten[s] the safety and security of the prison[,] to manage his subordinates and assure that they are upholding policy and performing in full capacity

13

to maintain a safe environment." (*Id.* at 9.)[4]  Furthermore, the allegation that Warden Parsons took no action to facilitate the cleaning of Plaintiff's cell after his cell block had been evacuated due to a COVID-19 outbreak contains no claim that this inaction occurred pursuant to SCI policy. This suggests that the SCI policies in place are designed to protect the sanitation, safety, and security of inmates and that, again, Warden Parsons selectively disregards said policies.

Likewise, with regard to Laub, Plaintiff's allegation that she is complicit in Warden Parsons' constitutional violations by ignoring or failing to report his misconduct contains no allegation that such behavior could be fairly attributed to SCI in any way.  Accordingly, even construing them generously and taking them as true, all of Plaintiff's claims against Defendants Laub and Warden Parsons fail.  *See Malone v. Wicomico Cnty.*, No. CV 19-2412-SAG, 2021 WL 4060433, at *9 (D. Md. Sept. 7, 2021) (unpublished) ("However troubling Plaintiff's allegations may be, they undermine her assertions of *Monell* liability, which as noted above attaches only when the execution—not the contravention—of a policy or custom inflicts the injury in question.") (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978)); *Ransom v. Page*, No. 7:23-CV-00166-M, 2025 WL 77897, at *11 (E.D.N.C. Jan. 10, 2025) ("Because Plaintiff has failed to allege a policy or custom fairly attributable to Defendant … the court grants Defendants' motion to dismiss … with regard to Plaintiff's *Monell* … claim."). Furthermore, for the reasons stated below, Plaintiff fails to state a claim against any Defendant in their individual capacity for deprivation of a constitutional right.

---

[4] The Court notes that to the extent this allegation is an attempt to plead supervisory liability against Warden Parsons, it fails because the Complaint contains no allegation that Warden Parsons had actual or constructive knowledge that any subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to anyone.  *See Simmons*, 2011 WL 3665027 at *2.  As discussed below, Plaintiff also fails to sufficiently allege any constitutional injury.

14

*Plaintiff's Claims Against Rush, Patrella, and Jernigan-Brown are*
*Too Vague and Conclusory to State a Plausible Claim*

First, Defendants argue that "[a]ll claims against Defendants Rush and Patrella must be dismissed because Plaintiff's allegation that these defendants 'governed' Red Unit 1 does not provide a factual basis for a claim of deliberate indifference." (Docket Entry 10 at 8.) "The only mention in the Complaint of Defendants Rush and Patrella is that there existed 'cruel, and unusual punishment . . . [in] Red Unit 1 governed by Patrella, Rush.' [D.E. 2 at 6] There is no allegation by Plaintiff that these defendants caused the alleged 'cruel, and unusual punishment' or that they ignored the alleged constitutional violation." (*Id.*) The undersigned agrees. Without more, these conclusory allegations fail to plausibly state a claim against Rush and Patrella, and they therefore fail.

Similarly, Defendants argue that "[a]ll claims against Defendant Jernigan-Brown must be dismissed because Plaintiff's threadbare allegations that [she] "governed" Red Unit 2 and that she directed a corrections officer not to date a grievance form do not provide a factual basis for a claim of deliberate indifference." (Docket Entry 10 at 9.) "Again, the unadorned claim that Defendant Jernigan-Brown 'governed' Red Unit 2 does not satisfy Plaintiff's burden of setting out the individual actions of Defendant Jernigan-Brown which constituted deliberate indifference," and "the allegations as to the (non) dating of the grievance and Defendant Jernigan-Brown's alleged manipulation of another corrections officer do not even go to the question of deliberate indifference or the conditions of confinement." (*Id.* at 9-10.) "The allegation that Defendant Jernigan-Brown 'governed' Red Unit 2 does not equate to an allegation that she caused the 'cruel, and unusual punishment' or specifically allege how she was deliberate[ly] indifferent." (*Id.* at 10.) Again, the undersigned agrees. Without more,

15

Plaintiff's vague allegations do not plausibly allege that Jernigan-Brown was aware of facts that "a substantial risk of serious harm existed" to Plaintiff and that she "drew that inference." *Scinto*, 841 F.3d at 225. Because Plaintiff has failed to allege sufficient facts to state a claim that is plausible on its face, his claims against Jernigan-Brown fail as well.

### Plaintiff Fails to State a Claim for a Constitutional Violation Against Any Defendant

The only specific injury Plaintiff alleges is that he experienced body pain and mental health issues "due to being Vitamin D deficient" when he was required to stay in his cell 24 hours a day. (Compl. at 6.) While this allegation plausibly includes a fact showing that his condition posed a risk of serious harm and that as a result Plaintiff was harmed, Plaintiff does not allege that any Defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address said risk, or that any defendant knew or should have known about said deficiency. *See Short*, 87 F.4th at 611 (4th Cir. 2023). Plaintiff's general allegation that the deprivations he experienced were "done with malice intent [sic]" is not particularized to any Defendant, and is conclusory, unsupported by facts, and thus insufficient to state a claim for deliberate indifference to a serious medical need. *See Hagan v. Scott*, No. 2:14CV32, 2015 WL 3607324, at *5 (N.D.W. Va. June 8, 2015) (unpublished), *report and recommendation adopted*, No. 2:14-CV-32, 2015 WL 3988522 (N.D.W. Va. June 30, 2015); *see also Allen v. Exec. Dir. of CDOC*, No. 21-CV-03151-WJM-KLM, 2022 WL 19775631, at *9 (D. Colo. Oct. 4, 2022) (unpublished), *report and recommendation adopted as modified*, No. 21-CV-3151-WJM-KLM, 2023 WL 3321361 (D. Colo. May 9, 2023).

For the remainder of Plaintiff's claims, he fails to allege any injury. Again, in order to state a sufficient conditions of confinement claim, Plaintiff must allege, objectively, that a prison official created a serious deprivation of a basic human need, and, subjectively, that said

16

official acted with deliberate indifference to the prison conditions that affected inmate health or safety through said deprivation. *See Farmer*, 511 U.S. at 834 (cleaned up); *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993). Because Plaintiff fails to sufficiently allege the serious deprivation of a basic human need, all of the remaining conditions of confinement claims are subject to dismissal. *See Fields v. Landon*, No. CV JKB-20-3039, 2023 WL 6119728, at *5 (D. Md. Sept. 18, 2023) (unpublished). Furthermore, they fail because Plaintiff does not state how any of the named Defendants were personally involved in the alleged violation of his rights. *See Iqbal*, 556 U.S. at 676. Moreover, as shown below, courts have found allegations comparable to Plaintiff's insufficient to state a claim upon which relief can be granted.

Plaintiff's complaints of being denied "exercise, sunlight, fresh air, outside recreation, and inside recreation[,]" even if taken as true, are insufficient to state a claim under Rule 12(b)(6), because he never specifies who perpetrated said deprivation, how or when it was accomplished, nor does he allege any specific dates, circumstances, affirmative misconduct by any particular Defendant, or other facts linking his allegations to Defendants. *Woods v. Grady Cnty. Jail*, No. CIV-23-875-D, 2024 WL 851505, at *3 (W.D. Okla. Jan. 22, 2024), *report and recommendation adopted*, No. CIV-23-875-D, 2024 WL 845876 (W.D. Okla. Feb. 28, 2024) ("[Plaintiff's] failure to link any of the Defendants with any of the alleged violations[,]" which included "no outdoor activity nor sunlight, fresh air, Vitamin D" "renders the Complaint legally deficient.").

Indeed, "Plaintiff's factual allegations fail to state a valid conditions of confinement claim. The … complaint states only that he [receives inadequate] recreation, sunlight, and fresh air. His allegations contain [insufficient] detail, including how or when Defendant denied these privileges or any reason for doing so. … Plaintiff also does not allege he was injured by the lack

17

of daily access to recreation, sunlight, and fresh air. His amended complaint is simply an 'unadorned, the-defendant-unlawfully-harmed-me accusation,' which fails to meet federal pleading standards." *McRae v. Davidson*, No. CV 323-043, 2023 WL 7817936, at *3 (S.D. Ga. Oct. 16, 2023) (citing *Iqbal*, 556 U.S. at 678), *report and recommendation adopted*, No. CV 323-043, 2023 WL 7726514 (S.D. Ga. Nov. 15, 2023); *see also Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1177 (D. Colo. 2010) (recommending that prison official defendants' motion to dismiss be granted where *pro se* prisoner plaintiff alleged conditions of confinement claims that included general conclusory allegations of "harsh and inhumane conditions" (including long-term solitary confinement, lack of proper medical and mental health care, lack of daily access to fresh air and sunlight, limited opportunity to communicate with others, severe restrictions on movement, and reduced environmental stimuli) because plaintiff "has not sufficiently alleged specific dates, circumstances, or conduct by the named [d]efendants. In sum, [plaintiff's] allegations are not adequate to state an Eighth Amendment violation.").

Furthermore, although Plaintiff does allege that he was deprived of recreation while housed in isolation, he does not allege that no exercise at all was permitted such that his conditions of confinement, viewed in totality, amounted to a constitutional violation. *See Wingo v. Johnson*, No. 3:12-CV-0014, 2012 WL 1390684, at *6 (W.D. La. Mar. 21, 2012) (unpublished) ("[C]ontrary to plaintiff's assertions, prisoners have no absolute constitutional right to outdoor recreation, so long as some form of exercise is permitted, or, the conditions of confinement, when viewed as a whole, are not violative of the Eighth Amendment[.]") (collecting cases), *report and recommendation adopted*, No. CIV.A. 12-0014, 2012 WL 1390678 (W.D. La. Apr. 20, 2012); *Patton v. Shelby Cnty. Sheriff's Dep't*, No. 220CV02438TLPTMP, 2021 WL 640833, at *5 (W.D.

Tenn. Feb. 18, 2021) (unpublished) ("Plaintiff does not allege when or for how long that Jail [sic] restricted his access to outdoor recreation. As a result, he does not sufficiently allege a total or near-total deprivation of recreational opportunity, and so he fails to state a claim for relief.").

Likewise, Plaintiff's claims regarding deprivation of shaves and haircuts fails. *Sears v. Washington*, 655 F. Supp. 3d 624, 627 (E.D. Mich. 2023) ("Denying a shave and a haircut also 'falls far short' of a constitutional violation.") (collecting cases); *Young v. Cox*, No. 1:24-CV-331, 2024 WL 4453272, at *3 (E.D. Tenn. Oct. 9, 2024) (same). Moreover, to the extent Plaintiff challenges his placement in restrictive housing for a total of 60 days, such an allegation fails to state a claim. *Skinner v. Moyer*, No. CV TDC-17-3262, 2020 WL 1065740, at *9 (D. Md. Mar. 4, 2020) (unpublished) (where plaintiff lived under conditions of segregation for two to three months over three occasions, and did "not set forth facts showing that he suffered injury from those specific periods of segregation, the Court finds that the evidence does not support an Eighth Amendment violation arising from those time periods.").

Furthermore, Plaintiff's allegation of being deprived of masks, gloves, and cell-cleaning supplies fails. *Cain v. Kiser*, No. 7:20-CV-00653, 2022 WL 897043, at *4 (W.D. Va. Mar. 28, 2022) (unpublished) ("the denial of hygiene products for brief periods does not amount to a serious deprivation of a basic human need, even when such denial results in unsanitary conditions") (collecting cases); *Sutherland v. Green*, No. CIV. A 306-1042, 2010 WL 3743865, at *3 (S.D.W. Va. Aug. 23, 2010) (unpublished) ("Plaintiff's complaint contains unsupported and vague factual allegations and mere conclusions [regarding deprivation of cleaning supplies], and, as such, they are not entitled to the assumption of truth.") (citation omitted), *report and recommendation adopted*, No. CIV. A. 306-1042, 2010 WL 3743863 (S.D.W. Va. Sept. 20, 2010); *Hernandez v. Delaware Cnty.*

19

of *Pennsylvania*, No. 22-CV-4187, 2023 WL 349254, at *6 (E.D. Pa. Jan. 20, 2023) (unpublished) ("[Plaintiff] does not allege how any individual Defendant was personally involved in the alleged deprivations. Thus, he fails to raise a plausible inference that any Defendant intended to punish him by depriving him of cleaning products or was otherwise deliberately indifferent to his medical vulnerability to COVID-19 or any other virus.").

Again, Plaintiff alleges that Oxendine "is being manipulated by unit manager Jernigan" and that "the prison will rectify a matter for one day then revert. … [R]etaliation follow each time I do litigation [sic]." (Compl. at 11.) "It is well settled that state officials may not retaliate against an inmate for exercising his constitutional rights[.]" *Joyce v. Thomas*, No. CIV.A. 7:07CV00447, 2007 WL 2811127, at *1 (W.D. Va. Sept. 24, 2007) (citing *American Civ. Liberties Union v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993)). "However, in order to sustain a cognizable retaliation claim under § 1983, an inmate must point to specific facts supporting his claim of retaliation." *Id.* (citing *White v. White*, 886 F.2d 271 (4th Cir. 1989)). "[B]are assertions of retaliation do not establish a claim of constitutional dimension." *Id.* (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (federal courts should regard inmate claims of retaliation with "skepticism"))). Here, the Complaint does not make it clear who in particular Plaintiff claims retaliated against him and in what way. "Accordingly, the court finds that [his] conclusory allegation of retaliation fails to state a claim on which relief may be granted under 42 U.S.C. § 1983." *Id.*

Next, the Court turns to Plaintiff's allegation regarding grievances. The Complaint is not a model of clarity. Again, Plaintiff alleges that "[g]rievance process are being manipulated and not processed to abort rectification, justice [sic]." (Compl. at 10.) He alleges that he "asked assistant unit manager Oxendine why haven't my previous grievance been processed

he said he didn't know [sic]." (*Id.*) Plaintiff further alleges that he presented Oxendine with another copy of said grievance and asked him to sign it in front of Plaintiff, that Oxendine signed it but did not date it, and that Oxendine told Plaintiff that Jernigan told him not to date it. (*See id.*) Plaintiff alleges that failing to date the grievance is a violation of "protocol" and that Jernigan-Brown's motivation was "to persuade [Plaintiff] not to put grievance in making empty promises of rectifying matters and never do [sic]." (*Id.*)

Here, as elsewhere, Plaintiff's claim is too vague and conclusory to be sufficiently pled. *Ramsey v. McMahon*, No. 2:11-CV-307, 2011 WL 4561181, at *3 (W.D. Mich. Sept. 30, 2011) (unpublished) ("Because Plaintiff makes no more than conclusory allegations that Defendants denied his grievance … he fails to state a claim."). Plaintiff does not explain how, if at all, Jernigan-Brown's failure to date the grievance caused a violation of the Eighth Amendment. Indeed, these facts could not plausibly allege any constitutional violation:

> Plaintiff … asserts that Defendants individually violated his constitutional rights by ignoring his grievances. … However, … "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) (citations omitted). Likewise, Plaintiff's assertion that Defendants violated prison rules "fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation." *Johnson v. S.C. Dep't of Corr.*, No. 3:06–2062–CMC, 2007 WL 904826, at *12 (D.S.C. Mar. 21, 2007).

*Miller v. Oliver*, No. CV 6:15-108-TMC-KFM, 2015 WL 5916178, at *2 (D.S.C. Oct. 8, 2015) (unpublished); *see also Shockley v. Brown*, No. 1:20CV229 (RDA/JFA), 2022 WL 1093266, at *3 (E.D. Va. Apr. 11, 2022) ("Because a state's grievance procedure confers no substantive rights upon prison inmates, a prison official's failure to comply with the grievance procedures is not actionable under § 1983. … Therefore, plaintiff's allegations do not state a claim under § 1983, and this claim also must be dismissed.") (collecting cases).

21

Lastly, Defendants argue that all claims against them should be dismissed with prejudice. (Docket Entry 10 at 13.) However, they cite to no authority that supports such an argument. This Court has previously dismissed actions similar to the instant action without prejudice where it has granted dispositive motions to defendants against plaintiffs who failed to file responsive briefs. *Willis v. Seabolt*, No. 1:21CV766, 2022 WL 3028205, at *6 (M.D.N.C. Aug. 1, 2022) (unpublished); *Parker v. Torres*, No. 1:21CV173, 2022 WL 2982549, at *6 (M.D.N.C. July 28, 2022) (unpublished). Therefore, the undersigned recommends that the instant action be dismissed without prejudice. *Cf. Evans v. McDonough*, No. 1:23CV8, 2024 WL 4203245, at *2 (M.D.N.C. Sept. 16, 2024) ("While Defendant asks the Court to consider dismissal with prejudice, Defendant does not explain his reasoning for such request nor does the undersigned find such harsh sanction warranted."), *report and recommendation adopted*, No. 1:23-CV-8, 2024 WL 4681551 (M.D.N.C. Nov. 5, 2024).

## III. <u>CONCLUSION</u>

For the reasons stated herein, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss (Docket Entry 9) should be **GRANTED**, and that the instant action should be **DISMISSED WITHOUT PREJUDICE**.

/s/  Joe L. Webster
United States Magistrate Judge

April 28, 2025
Durham, North Carolina